IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JESSE PETTAWAY, JR.,           )
AIS #130451,                   )
                               )
        Plaintiff,             )
                               )
    v.                         )        CASE NO. 2:08-CV-507-MEF
                               )
ALABAMA BOARD OF PARDON        )
AND PAROLE MEMBERS, et al.,    )
                               )
        Defendants.            )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  INTRODUCTION AND PROCEDURAL HISTORY

Jesse Pettaway, Jr. ["Pettaway"], a state inmate, filed this 42 U.S.C. § 1983 action

on June 18, 2008 in which he challenges adverse decisions by the Alabama Board of

Pardons and Paroles from June of 1991 until the last such decision issued on October 15,

2007.[1] The defendants in this cause of action are Bill Wynne, Velinda Weatherly, and

Robert Longshore, members of the Alabama Board of Pardons and Parole.  Pettaway seeks

declaratory and injunctive relief regarding the constitutionality of Alabama's parole

consideration process.  *Plaintiff's Complaint Court Doc. No. 1* at 2-3.

---

[1]Although the Clerk of this court stamped the complaint "filed" on June 27, 2008, the documents executed and submitted with the complaint indicate that Pettaway could not have placed the complaint in the prison mail system any earlier than June 18, 2008.  The law is well settled that a pro se inmate's complaint is deemed filed the date it is delivered to prison officials for mailing.  *Houston v. Lack,* 487 U.S. 266, 271-272 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-1341 (11th Cir. 1999); *Garvey v. Vaughn*, 993 F.2d 776, 780 (11th Cir. 1993).  In light of the foregoing, the court considers June 18, 2008 as the date of filing.

The defendants filed a special report and supporting evidentiary materials addressing the claims presented in the complaint.  Pursuant to the orders entered herein, the court deems it appropriate to treat the defendants' report as a motion for summary judgment. *Order of August 12, 2008 - Court Doc. No. 11*.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's response in opposition to the report/motion, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[2]  The party moving for summary

---

[2]Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic only."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine issue of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine issue material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial."). A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of [parole] authorities. Unless a prisoner can point to

> sufficient evidence regarding such issues of judgment to allow him to prevail
> on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motion for summary judgment, Pettaway is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own

conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003)

5

(citation omitted).  To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Pettaway fails to demonstrate a requisite genuine issue of material fact in order

6

to preclude summary judgment. *Matsushita*, *supra*.

### III. FACTS

On November 17, 1981, the Circuit Court of Baldwin County, Alabama sentenced Pettaway to life imprisonment for a first degree rape conviction. *Pettaway v. Holt*, Case No. 00-CV-0475-CB-M (S.D. Ala. 2000). Pettaway has been considered for parole on eight occasions during his incarceration but has been denied parole after each parole consideration hearing. *Plaintiff's Complaint - Court Doc. No. 1* at 2. The most recent decision to deny Pettaway parole occurred on October 15, 2007. The record demonstrates that this denial of parole occurred because Pettaway failed to persuade members of the parole board that he is an acceptable risk for release on parole. *Defendants' Exhibits A and B - Court Doc. No. 10-1* at 1-2. Prior to the October 15, 2007 decision to deny parole, the last denial of parole occurred in 2002. *Plaintiff's Complaint - Court Doc. No. 1* at 3.

### IV. DISCUSSION

Pettaway asserts that the defendants violated his constitutional rights by denying him parole since the inception of his incarceration in the Alabama prison system. Specifically, Pettaway complains that the Alabama Board of Pardons and Paroles, through the actions of its members, (i) denied him due process by failing to provide a parole consideration hearing within three years of the 2002 and 2007 denials of parole, (ii) violated his right to equal protection by relying on his race to deny him parole, and (iii) circumvented the Ex Post Facto Clause in determining the parole consideration set-off period. *Plaintiff's*

*Complaint - Court Doc. No. 1* at 2-3.  Pettaway further complains that *Ala. Code* § 15-22-26 is unconstitutionally vague as it vests absolute discretion to parole board members with respect to whether an inmate is granted release on parole.  Under applicable federal law, these claims entitle Pettaway to no relief from this court.

### A.  Claims Barred by the Statute of Limitations

Upon review of the pleadings filed in this case, it is clear that any claims arising from adverse parole actions or decisions which occurred on or before June 17, 2006 are barred by the statute of limitations.

> Federal courts must look to state law to determine, first, what statute of limitations is applicable, and second, whether that limitations period is tolled. *Whitson v. Baker*, 755 F.2d 1406, 1409 (11th Cir. 1985).  Selection of a limitations period for § 1983 actions changed several times [between 1985 and 1989].  Alabama law, however, provides that the applicable limitations period is the one in effect when the claim is filed, not when the cause of action arose.  *Tyson v. Johns Manville Sales Corp.*, 399 So.2d 263, 269-70 (Ala. 1981).  It is undisputed that § 1983 claims were subject to a two year limitations period at that time.  *See Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483-84 (11th Cir. 1989) (*Jones II*).

*Dukes v. Smitherman*, 32 F.3d at 537.  In Alabama, the general statute of limitations for personal injury actions is two years.  *Ala. Code* § 6-2-38(l).  Thus, at the time Pettaway filed the instant complaint, the applicable statute of limitations for actions brought under 42 U.S.C. § 1983 was two years.  *Owens v. Okure*, 488 U.S. 235, 249-250 (1989)(the proper statute of limitations for § 1983 actions is the forum state's general or residual statute of limitations for personal injury actions); *see also Lufkin v. McCallum*, 956 F.2d

1104, 1105 (11th Cir. 1992).  The tolling provision set forth in *Ala. Code* § 6-2-8(a) is unavailing under the circumstances of this case.  Consequently, Pettaway has no legal basis on which to proceed with respect to any claims that arose on or before June 17, 2006 as he filed this cause of action more than two years after these alleged violations accrued, on June 18, 2008.  In light of the foregoing, the court concludes that Pettaway's challenges to actions taken against him on or before June 17, 2006 are barred by the applicable statute of limitations and the defendants are therefore entitled to summary judgment on these claims.

### B.  Due Process - The 2007 Hearing and Denial of Parole

Pettaway asserts that defendants Williams, Longshore and Weatherly denied him due process when they (i) failed to act in accordance with laws and regulations applicable to determining an inmate's suitability for release on parole, setting of parole consideration dates and scheduling of parole hearings, (ii) set off his parole consideration date based on a regulation enacted after entry of his conviction, and (iii) used statutes and regulations enacted after his date of conviction in the parole consideration process.  Pettaway's claims arising from an alleged lack of due process with respect to the parole consideration process and denial of parole to him entitle him to no relief.

"The Alabama [parole] statute ... calls for discretionary rather than mandatory action on the part of the board.  The law directs the board to consider a number of factors in making their determination, which is a subjective rather than objective determination.  It

does not contain any language that mandates parole... . When the statute is framed in discretionary terms there is not a liberty interest created... . Alabama parole statutes do not create a liberty interest [in parole]...." *Thomas v. Sellers*, 691 F.2d 487, 489 (11th Cir. 1982). This court's review of the history of the Alabama statute governing release on parole establishes that from its inception the statute has been framed in discretionary terms.[3] The law is well settled that "the mere possibility of parole provides simply 'a hope that is not protected by due process....' ... [In addition], the Alabama parole statute frames the Parole Board's authority in discretionary terms, and thus does not create for Alabama prisoners a protected liberty interest in the expectation of parole. *See Thomas v. Sellers,* 691 F.2d 487 (11th Cir. 1983)." *Ellard v. Alabama Bd. of Pardons and Paroles*, 824 F.2d 937, 942 (11th Cir. 1987).

Despite having no protected liberty interest in parole, Pettaway appears to argue that the parole board's regulation governing parole set-off dates creates a protected liberty interest in the procedures related to parole consideration. Pettaway contends that this regulation creates a protectable expectancy of parole consideration at the set-off time and, therefore, maintains that the consideration process must comport with due process. This

---

[3]Section 15-22-26 of the Alabama Code governs the authority of the Alabama Board of Pardons and Paroles to grant parole to inmates. The pertinent portion of this statute reads as follows:

> No prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the Board of Pardons and Paroles is of the opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law and that his release is not incompatible with the welfare of society....

*Ala. Code* § 15-22-26.

claim is foreclosed by *Slocum v. Georgia State Board of Pardons and Paroles*, 678 F.2d

940, 941-942 (11th Cir. 1982), in which the Eleventh Circuit deemed such a "unique theory

... without merit."  678 F.2d at 942.

> Petitioner argues that even if there is no statutorily created liberty interest in parole, particular [statutory parole] provisions ... create a protectable entitlement to parole consideration.  Specifically, petitioner cites the requirement ... that parole consideration "shall be automatic" upon the expiration of a set period of confinement and language ... that the board include in the parole file "as complete information as may be practically available...."  If these provisions create a protectable expectancy in parole consideration, petitioner argues that the consideration must comport with due process standards.  Petitioner's unique theory is without merit.  Unless there is a liberty interest in parole, the procedures followed in making the parole determination are not required to comport with standards of fundamental fairness.  *See Brown v. Lundgren*, 528 F.2d 1050 (5th Cir.), *cert. denied*, 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 283 (1976).  In *Staton v. Wainwright*, 665 F.2d 686 (5th Cir. 1982) (former Fifth Circuit decision), the court concluded that no liberty interest in parole was created by the Florida statutes. The court, therefore, rejected appellant's claim that his due process rights were violated when he did not receive an initial parole interview within the time required under the parole laws.  The analysis in *Staton* was adopted by the Eleventh Circuit in *Hunter v. Florida Parole and Probation Commission*, 674 F.2d 847 (11th Cir. 1982), where the court held that no due process violation could be shown through an allegation that the Florida Parole and Probation Commission improperly calculated a prisoner's "presumptive parole release date."   Accordingly, in the instant case petitioner['s] ... allegation that the ... parole board has not accorded him adequate parole consideration does not entitle him to [relief].

*Slocum*, 678 F.2d at 942.

Pettaway does not possess a liberty interest in being granted parole that is protected

by the Due Process Clause of the Constitution.  *Heard v. Georgia State Board of Pardons*

*and Paroles*, 222 Fed. Appx. 838, 840 (11th Cir. 2007); *Monroe v. Thigpen*, 932 F.2d 1437,

1441 (11th Cir. 1991); *Ellard*, 824 F.2d at 941-942; *Thomas*, 691 F.2d at 488-489.  Absent a constitutionally protected liberty interest in parole, "the procedures followed in making the parole determination are not required to comport with the standards of fundamental fairness."  *O'Kelley v. Snow*, 53 F.3d 319, 321 (11th Cir. 1995); *Slocum*, 678 F.2d at 942; *Orellana v. Kyle*, 65 F.3d 29, 32 (5th Cir. 1995) (because applicable Texas parole statutes confer "no liberty interest in obtaining parole" Texas inmate could not "complain of the constitutionality of procedural devices attendant to parole decisions."). Thus, the procedural due process protections of the Fourteenth Amendment do not apply either to the parole decision making process, *Thomas*, 691 F.2d at 488-489, or the parole consideration process, *Slocum*, 678 F.2d at 942 (failure to provide parole review within time required under parole rules or properly calculate presumptive date of release on parole does not constitute a violation of due process).

Moreover, to the extent that the complaint can be construed to challenge the constitutionality of setting and/or delaying a parole consideration hearing past the time mandated by governing administrative regulations, such action likewise does not run afoul of the Constitution. Federal courts no longer ascertain whether a state created a constitutionally protected liberty interest by parsing language of statutes and regulations to determine if the language was "of an unmistakably mandatory character" placing "substantive limitations on official discretion," but must instead look to the nature of the deprivation to determine if a state created a liberty interest.  *Sandin v. Conner*, 515 U.S.

472, 483-484 (1995).  As previously noted, an Alabama inmate has no liberty interest in parole protected by the Due Process Clause. Although "States may under certain circumstances create liberty interests which are protected by the Due Process Clause[,]... these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*.  "Since an inmate is normally incarcerated in prison, [the plaintiff's remaining in prison while awaiting parole consideration] did not impose atypical and significant hardship on him in relation to the ordinary incidents of prison life and, therefore, did not deprive him of a protected liberty interest." *Asquith v. Department of Corrections*, 186 F.3d 407, 412 (3rd Cir. 1999).

Nevertheless, even though there is no liberty interest involved, a parole board may not engage in "flagrant or unauthorized action." *Thomas*, 691 F.2d at 489.  The parole defendants maintain they acted in accordance with state law and applicable administrative regulations when scheduling Pettaway's 2007 parole consideration hearing and denied parole to Pettaway because they were not persuaded that he presented an acceptable risk for release on parole.  The decisions of the parole board members with respect to Pettaway demonstrate reasonable and appropriate actions, *Hendking v. Smith*, 781 F.2d 850, 853 (11th Cir. 1986), rationally related to the legitimate state interest of ensuring that only those

13

inmates best suited for parole are actually granted this privilege. *Cf. Conlogue v. Shinbaum*, 949 F.2d 378 (11th Cir. 1991); *see also Thornton v. Hunt*, 852 F.2d 526 (11th Cir. 1988). Pettaway has therefore failed to present any evidence indicating arbitrary or capricious actions on the part of the Alabama Board of Pardons and Paroles or its board members. Consequently, summary judgment is due to be granted in favor of the defendants with respect to each of Pettaway's due process claims.

## C. Equal Protection

Pettaway, an African American inmate convicted of first degree rape, asserts that defendants violated his right to equal protection by denying him parole because of his race. *Plaintiff's Complaint - Court Doc. No. 1* at 3. Pettaway further contends that if another inmate who is a convicted murderer "is fit for society after ... taking the lives of two human being[s]" then he believes he is "fit for society as well." *Id*.

To establish a claim cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)." *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006). "[O]fficial action will not be held unconstitutional solely because it results in a ... disproportionate impact.... Proof of ...

discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."  *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977).  "'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."  *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991).  In a case such as this one, where the plaintiff challenges actions of parole officials, exceptionally clear proof of discrimination is required.  *Fuller v. Georgia Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988).  Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent.  *McKleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).

Since this case is before the court on a properly supported motion for summary judgment from the defendants, Pettaway bears the burden of producing evidence which would be admissible at trial sufficient to show that the action of the defendants resulted from intentional discrimination.  *Celotex*, 477 U.S. at 322-324; *Waddell*, 276 F.3d at 1279. The plaintiff cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of [his]

15

position" sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252; *Waddell*, 276 F.3d at 1279 (conclusory allegations based solely on subjective beliefs are insufficient to oppose summary judgment).  Instead, the law is clear that the plaintiff must present significant probative evidence of intentional discrimination to preclude summary judgment in favor of the defendants. *Anderson*, 477 U.S. at 249.

The defendants adamantly deny that they undertook any action in Pettaway's parole consideration process based on race or any other constitutionally impermissible reason. *Defendants' Exhibits A and B - Court Doc. No. 10-1* at 1-2 (decision to deny parole not based on race or any other protected interest).  In addition, the defendants maintain they based the decision to deny parole solely on their determination that Pettaway was not suitable for release on parole.  *Defendants' Exhibit A (Affidavit of Velinda Weatherly) - Court Doc. No. 10-1* at 1 ("I was not of the opinion that Mr. Pettaway would live and remain at liberty without violating the law, nor that his release was not incompatible with the welfare of society."); *Defendants' Exhibit B (Affidavit of Robert Longshore) - Court Doc. No. 10-1* at 2 (same).  Pettaway has failed to present any evidence, significantly probative or otherwise, that race or some other constitutionally impermissible factor constituted a motivating factor in the actions of the defendants about which he complains. Other than Pettaway's conclusory allegation that the defendants violated his equal protection rights, the record is devoid of admissible evidence that the defendants acted in an intentionally discriminatory manner.  The allegations presented by Pettaway do not

warrant an inference of discriminatory intent as the showing of a disparate impact upon inmates is insufficient to demonstrate an equal protection violation. *Sweet*, 467 F.3d at 1319; *E & T Realty*, 830 F.2d at 1114-1115; *Horner v. Kentucky High School Athletic Ass'n*, 43 F.3d 265, 276 (6th Cir. 1994). Moreover, the arbitrary application of administrative rules and/or state laws does not constitute a violation of the Constitution. *E & T Realty*, 830 F.2d at 1114. Pettaway has therefore not been denied equal protection of the law with respect to the denial of parole. Thus, the defendants are entitled to summary judgment on Pettaway's discrimination claim.

### D.  Ex Post Facto Application of Consideration Guidelines

Pettaway contends the defendants violated his constitutional rights when they retroactively applied applicable administrative rules, which altered the frequency of parole consideration dates from every three years to every five years, in setting his 2007 parole consideration date. In support of this claim, Pettaway complains that set-off of his parole consideration date for a possible five years upon retroactive application of amended administrative regulations is unconstitutional because prior regulations allowed parole consideration at more frequent intervals. This allegation implicates the protections guaranteed by the Ex Post Facto Clause and the court therefore construes the claim as one arising under this provision of the Constitution.

The Ex Post Facto Clause bars "enactments which, by retroactive operation, increase the punishment for a crime after its commission." *Garner v. Jones*, 529 U.S. 244, 249

17

(2000).  An amended law or regulation must create a significant risk of increasing the punishment imposed upon an inmate in order for the amendment to run afoul of this constitutional provision.  *Garner,* 529 U.S. at 255.  Decisions with respect to whether a parole regulation violates the Ex Post Facto Clause when applied to inmates entitled to more frequent parole consideration at the time they committed their crimes must be made on a case-by-case basis.  *Harris v. Hammonds*, 217 F.3d 1346, 1350 (11th Cir. 2000).  In making these decisions, a court is required to consider evidence of the general operation of the parole system and any other evidence produced by a prisoner in support of his assertion that the regulation "'as applied to his sentence,' created a significant risk of increasing his punishment."  *Harris*, 217 F.3d at 1350 (quoting *Garner v. Jones,* 529 U.S. 244, 255, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000)); *Jones v. Ray*, 279 F.3d 944, 946 -947 (11th Cir. 2001).

In *Garner*, the Supreme Court addressed whether an amended rule extending parole consideration hearings from every three years to every eight years in Georgia violated the Ex Post Facto Clause.  The Court determined that extending the time for a scheduled parole consideration hearing did not prevent the exercise of discretion by the Georgia Board of Pardons and Paroles during the period between parole reviews, because the agency's policies permit the Board, in its discretion, to schedule expedited reviews in the event of a change in circumstances or new information.  *Garner*, 529 U.S. at 256.

A determination of whether retroactive application of a particular change in a law

18

or regulation governing parole respects the prohibition of ex post facto legislation is often a question of particular difficulty when the discretion vested in the parole board is taken into account.  *Id.* at 249.  In deciding whether a parole regulation prevents a parole board's exercise of discretion, the court may consider the implementing regulations, the statutory structure and the board's representations regarding its operations.  *Id.* at 254.  "The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience."  *Id.* at 253.

Alabama law gives the Alabama Board of Pardons and Paroles broad discretion in determining whether an inmate should be granted parole, *Ala.Code* § 15-22-26, "and when and under what conditions" parole will be granted.  *Ala. Code* § 15-22-24(a).  State law also requires that the parole board consider the public interest in every case.  *Ala. Code*  § 15-22-26.  This unconditional discretion, however, does not displace the protections of the Ex Post Facto Clause.  *Garner*, 529 U.S. at 250. The proper inquiry in cases challenging retroactive application of new parole policies or statutes is whether the retroactive change creates "a sufficient risk of increasing the measure of punishment attached to the covered crimes."  *Id.* (internal quotation marks and citation omitted).

The rules and regulations governing the frequency of parole consideration dates are found in the operating procedures for the Alabama Board of Pardons and Paroles.  In 2001, the parole board adopted the rules and regulations currently in effect.  The board amended these rules and regulations in 2004.  Article 6, § 11, *Rules, Regulations and Procedures of*

*the Board of Pardons and Paroles*, vests the Board with discretion to determine whether to set the case for reconsideration and, if reconsideration is allowed, "when the case shall next be docketed for consideration, not to exceed five years."[4]  Article 2, § 7, provides that, if the Board "scheduled the next consideration three years or more after denial [of parole] ...., the [Review] Committee may consider earlier scheduling, but such review shall not begin earlier than eighteen months after the Board has denied or revoked parole."[5]  The opportunity for an expedited parole review is likewise available to qualified inmates. Article 2, § 1, provides that "[s]uch a rescheduling may be granted only for good cause shown and circumstances bearing on [the inmate's] probability to succeed on parole, not merely because the prisoner is following the rules in prison."  Thus, the rule changes are designed to facilitate better exercise of the Board's discretion.  *Garner*, 529 U.S. at 254-255.

It is clear that the law changing the frequency of parole consideration dates from three years to five years does not extend the term of imprisonment imposed upon Pettaway

---

[4]The initial operating procedure governing the scheduling of parole consideration dates, *Ala. Adm. Code* § 640-X-2.02(8)(1982, revised 1986), provided that upon denial of parole to an inmate "the Board will determine when [the inmate's] case is to be reset but in no event shall it be reset for more than three years from the date of denial."  *Defendants' Exhibit F - Court Doc. No. 10-1* at 8-9.  The increase in the reset date from no "more than three years" from denial of parole to the current five-year maximum originally occurred in the adoption of the 2001 rules and regulations at Article 6, § 11.  *Defendants' Exhibit G - Court Doc. No. 10-1* at 10.  The court notes that the parole board retained the five-year set off in its subsequent amendments.

The 2001 amendment to the regulation in Article 2, § 8 allowed the "earlier scheduling" of parole consideration twenty-four months, rather than eighteen months, after the denial of parole..

or increase the level of risk that he will serve a longer term of imprisonment.  Specifically, prior to this change, the parole board never guaranteed Pettaway that he would be unconditionally released before completion of his life sentence.  Additionally, eighteen months after a denial of parole Pettaway has the opportunity under the current regulation to submit information about changed circumstances bearing on his suitability for parole, and he could be scheduled for consideration at an earlier date.  Hence, even if risk of an increased term of incarceration develops in Pettaway's case, he may, upon a showing of "good cause ... and circumstances bearing on his probability to succeed on parole," seek an earlier review before the 5-year interval expires.  Article 2, § 1, *Rules, Regulations and Procedures of the Board of Pardons and Paroles*.

Pettaway has presented no evidenc demonstrating that the regulations at issue create a significant risk of increased punishment for Pettaway.  Moreover, Pettaway possesses the ability to petition the parole board for an earlier parole consideration date.  Based on the foregoing, the court concludes that the change about which Pettaway complains did not lengthen his actual term of imprisonment.  Thus, Pettaway's challenge to the potential increase in time between parole consideration dates does not rise to the level of a constitutional violation and provides no basis for relief in this 42 U.S.C. § 1983 action. *Garner*, 529 U.S. at 253-256; *Olstad v. Collier*, 326 Fed.Appx. 261 (5th Cir. 2009) (retroactive imposition by parole board of changes in Texas parole policy allowing a potential five year set-off until prisoner's "next parole review presents no ex post facto

violation because its effect on increasing [plaintiff's] punishment is merely conjectural....

The Board is vested with discretion as to how often to set [plaintiff's] date for reconsideration, with five years for the maximum; the Board is also permitted to adjust subsequent review dates and conduct a special review if [plaintiff's] status changes."); *Creel v. Kyle*, 42 F.3d 955, 957 (5th Cir.), *cert. denied*, 514 U.S. 1070, 115 S.Ct. 1706 (1995) (change in rules that lengthen period of time between parole reconsideration hearings applied retroactively by parole board not violative of the Ex Post Facto Clause). The defendants are therefore entitled to summary judgment on this claim.

## E.  Constitutionality of State Statute

Section 15-22-26 of the Alabama Code governs the authority of the Alabama Board of Pardons and Paroles to grant parole to inmates.  The pertinent portion of this statute reads as follows:

> No prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the Board of Pardons and Paroles is of the opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law and that his release is not incompatible with the welfare of society....

*Ala. Code* § 15-22-26.  Pettaway complains that this section of the Alabama Code is unconstitutionally vague and arbitrary as it furnishes members of the parole board complete discretion in the parole decision-making process.

The statute challenged by Pettaway does not address constitutional freedoms or

identify unlawful conduct but merely sets forth the standards members of the parole board must follow prior to granting an inmate parole. "A rule that does not reach constitutionally protected conduct is void for vagueness only if it is impermissibly vague in all its applications. *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982). The test is whether the enactment is substantially incomprehensible. *Exxon Corp. v. Busbee,* 644 F.2d 1030, 1033 (5th Cir. May 1981), *cert. den.*, *Exxon Corp. v. Georgia Assn. of Petroleum Retailers*, 454 U.S. 932, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981)." *Woodruff v. United States Dept. of Labor, Office of Workers Compensation Program*, 954 F.2d 634, 643, *rehearing denied*, 961 F.2d 224 (11th Cir. 1992).

The statute at issue is substantially comprehensible with respect to establishing the standards for release of inmates on parole. The guidelines set forth in § 15-22-26 "provide explicit standards for those who apply them" and "give the person of ordinary intelligence a reasonable opportunity to know what is [required]." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298-2299, 33 L.Ed.2d 222 (1972). The mere fact that the statute provides for the use of discretion and reliance on personal opinion does not render it impermissibly vague or arbitrary. As the Alabama Supreme Court correctly determined:

> [The inmate] contends that § 15-22-26 is unconstitutionally vague on its face or as it is administered by the Board of Pardons and Paroles. "A statute that does not concern First Amendment freedoms or the definition of criminal conduct may be declared unconstitutionally vague 'only if a person of ordinary intelligence, exercising common sense, can derive no rule or

standard at all from the statute's language.' *Friday v. Ethanol Corp.*, 539 So.2d 208, 213 (Ala.1988)." *State v. Blake*, 642 So.2d 959, 962 (Ala.1994). Section 15-22-26 is a typical parole statute that gives the parole board total discretion in the granting of paroles. *Tedder v. Alabama Bd. of Pardons & Paroles*, 677 So.2d 1261, 1263 (Ala.Crim.App.), *cert. denied*, 518 U.S. 1008, 116 S.Ct. 2531, 135 L.Ed.2d 1054 (1996); *see also Thomas v. Sellers*, 691 F.2d 487, 488-89 (11th Cir. 1982). Because the statute provides that parole may be granted at the board's discretion, it does not confer a liberty interest in parole that is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. E.g., *Tedder,* 677 So.2d at 1263. The discretion granted to the parole board by § 15-22-26 does not, however, make the statute vague; rather, it gives the board the authorty to consider each parole application individually.

Section 15-22-26 ... is not unconstitutionally vague on its face or as it is administered by the board; [the inmate's] contentions are meritless.

*Thompson v. Board of Pardons and Paroles*, 806 So.2d 374, 375 (Ala. 2001).

The Alabama parole statute governing standards for parole of inmates is a typical parole statute which vests total discretion in the Alabama Board of Pardons and Paroles. *Ellard*, 824 F.2d at 942; *Thomas*, 691 F.2d at 489. There is nothing unconstitutionally vague about the statute. Moreover, the Alabama parole scheme has been reviewed by the Eleventh Circuit Court of Appeals on numerous occasions, and the court has acknowledged the constitutionality of the discretion accorded the Board and continuously stressed "that absent flagrant or unauthorized action by a parole board the discretionary power vested in a parole board will not be interfered with by the Federal courts." *Thomas*, 691 F.2d at 489.

## V. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the defendants.

3. This case be dismissed with prejudice.

4. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before November 3, 2010 the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 20th day of October, 2010.

25

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE